**Ethel A. SIMS and Husband, Frank Sims, Appellants,**

v.

**The TRAVELERS INSURANCE COMPANY, Appellee.**

No. 16643.

Court of Civil Appeals of Texas.

Fort Worth.

May 28, 1965.

Rehearing Denied June 25, 1965.

Carter, Gallagher, Jones & Magee and Ben T. Warder, Jr., Dallas, for appellants.

Thompson, Knight, Wright & Simmons, Pinkney Grissom, Frank Finn, Jr., and John A. Gilliam, Dallas, for appellee.

MASSEY, Chief Justice.

Under the Texas Workmen's Compensation Law an injured employee is com-

pensated for "general" partial incapacity by calculating 60% of the difference between his average weekly wages before he was injured and his average weekly wage earning capacity during the existence of the partial incapacity,—not to exceed $35.00 per week and not for a greater time period than 300 weeks. Vernon's Ann.Tex.Civ.St. Art. 8306, § 11.

When such an employee's period of total incapacity ceases, and he has a residual temporary partial incapacity which is not "general" but consists in a disability *which is confined to a bodily member*, as to a leg,—the amount of his weekly compensation (from and after the date of such confinement) is calculable by multiplying the percent of incapacity existent in the member, as the "percent of 'loss of use' of the leg", by the "average weekly wage" figure, but not to exceed the maximum allowable "basic figure" of $35.00. Further, since the maximum number of weeks for which compensation for permanent "loss of use" controls (in the case of a leg—200 weeks), the duration for the payment of the compensation would be thereby likewise controlled,—although the time would be further restricted in the event the partial incapacity or "loss of use" sooner terminated. V.A.T.S. Art. 8306, § 12. See Fidelity & Casualty Company of New York v. Shores, 329 S.W.2d 911 (Fort Worth Civ.App., 1959, writ refused).

When disability or incapacity becomes confined to one of the members set out in Sec. 12 of Art. 8306, it amounts to a "loss of use" of the member in so far as the method whereby it should be compensated is to be selected. So long as it is not so confined a "general" incapacity exists (coexists). If it is so confined the method of calculating the amount payable because thereof is calculable under the second paragraph of this opinion. When a "general" incapacity exists the method of calculating the amount payable because thereof is stated in the first paragraph. If incapacity exists, whether it consists in a "loss of use" of a specific member or is of a general

character to be distinguished therefrom, there would exist an obligation that compensation be paid.

Conditions possible to be hypothesized would, with respect to a decision upon the method to be selected in computing the amount of compensation, be the same as in those cases of injuries which were originally to a "specific member" of the body, but where, as a proximate result, the effects extend to other parts of the body and thereby cause general disability. In such cases the injured employees may elect to be compensated under *either* method. They are entitled to make the election if they take these precautions to preserve such right. However, they may not be compensated under both. 45 Tex.Jur. p. 612 "Workmen's Compensation", § 178, "Where Injury Results in Additional Permanent Incapacity".

In the case presently before us the jury found, in answer to Special Issue No. 9, that the claimant sustained "partial disability". Answers to additional issues were to the effect that the period of such disability began April 12, 1963, and the duration thereof was fifty-two (52) weeks. Uncontroverted evidence established that before the injury claimant's average weekly wage was $75.46. The jury found that her average weekly wage-earning capacity during the period of the aforesaid temporary partial incapacity was $60.00. In another portion of its verdict the jury found, by answer to Special Issue No. 14, that claimant's disability became confined solely to her leg (the date thereof being April 12, 1963). It also found that she suffered neither a total nor partial "loss of use" of her leg. Issues inquiring about "temporary" or "permanent" in relation to duration of such "loss of use", if any, were not answered because the court had conditioned (requisite therefor upon the jury's return of different) answers.

When the jury returned its answers, as above, the court decided not to receive it as the verdict. Believing that a conflict

existed in answers to Special Issues Nos. 9 and 14, the jury, under written instructions of the court, was directed to attempt reconciliation. The jury did reconcile the answers by changing its answer to Special Issue No. 14. The jury's ultimate finding was that claimant's disability "did not become confined solely to her left leg". In accord with the original instructions of the court's charge, the jury struck the original findings that claimant had suffered neither a total nor partial "loss of use" of her leg.

Claimant properly made and preserved complaint because of the court's action. Such is made the subject of a series of points of error.

In our opinion there was no error. Consideration given to the theories under which the litigation was conducted, a conflict existed because the claimant was entitled to a judgment under her theory (Special Issue No. 9, et seq.), or the insurance company was entitled to a judgment under its theory (Special Issue No. 14, et seq.). Fireman's Fund Indemnity Co. v. Hopkins, 119 S.W.2d 394 (San Antonio Civ.App., 1938, no writ history). The court knew that it would be required to render a judgment. If the judgment was to be one by which any compensation for temporary partial incapacity would be awarded the court required a verdict by which it could calculate the amount of compensation due. Of necessity it must be enabled thereby to make the calculation on either the basis of "general" temporary partial incapacity or on the basis of a temporary partial "loss of use" of the leg as a "specific injury". The requirement existed because of the parties' pleadings. Of this, more anon. Under the answers first returned the court could do neither. If incapacity became confined to a specific member (becoming "loss of use" for purposes of computing the amount of compensation to be awarded), the claimant would have no general incapacity thereafter. If incapacity existed theretofore its character would be that of general incapacity, and that general incapacity (although it might undergo a change from "total" to "temporary") would persist until, but only until, it became confined to a specific member,—if it continued to exist.

Further complicating the situation confronting the trial court was the effect of the jury's finding in answer to Special Issue No. 14, that claimant's disability became confined to her leg, coupled with answers returned to issues conditioned upon such finding which established that (though the incapacity became so confined) no "total" nor "partial" loss of use was resultant. The answer to Special Issue No. 14 conflicted with the answers to the issues conditionally submitted thereunder, for if the claimant had a disability which became confined to her leg she had (for purposes of computing compensation) a "loss of use" as applied to the leg. It would be improper to find that such "loss of use" was neither a "total" nor a "partial" loss of use.

It appears that the trial court decided that it would be simpler to require the jury to resolve the conflict existing in the answers to Special Issues No. 9 and No. 14; then, in the event the answer to No. 9 was changed (with deletion of answers to the conditionally submitted issues appertaining), without change made in the answers to the issues conditionally submitted under Special Issue No. 14, he could send the jury back to resolve the conflict. The jury did what one would expect (consideration given to the findings first made in answer to the issues conditionally submitted under Special Issue No. 14) and changed its answer to No. 14. The new finding was that the claimant's disability did not become confined to her leg. The jury struck the answers previously returned to the issues thereunder conditionally submitted. In view of the jury's action the trial court was relieved of any necessity to instruct the jury to resolve the conflict between the jury's answer to Special Issue No. 14 and the issues conditionally submitted thereunder. Such conflict ceased to exist.

The claimant made and filed a motion for mistrial, and therein her attorney asserted

that there was no conflict, but that if there was a mistrial should be declared. Coupled with her motion was a complaint because of the court's failure to instruct the jury to resolve the conflict appertaining to Special Issue No. 14, etc.

We hold that there was no error in the court's failure to give the instructions. The court was at liberty to defer any additional instructions until there was a determination made by the jury as to what it might choose to do in resolving the conflict between its answer to Special Issues No. 9 and No. 14. When such conflict was eliminated there was no necessity that any further action be taken.

We have heretofore mentioned the state of the pleadings in the case. We assume the court had them in mind in deciding that a conflict existed in the answers first returned. Claimant's pleadings alleged general incapacity. She did not seek compensation based upon "loss of use" of the leg. It was the insurance company which attacked claimant's attempt to recover on the theory of a "general" incapacity, one method adopted having been to allege that the claimant's "present condition, complaints and disability, if such there be, are limited to Mrs. Sims' * * * leg". In this state of the pleadings it was under the company's defensive theory that Special Issue No. 14 was submitted to the jury. It was in accordance with the contentions of the company that the answer thereto was first returned by the jury. The circumstances were such that the claimant must be treated as having already, at an earlier time, *elected* as to the theory under which she was claiming compensation, and the method by which she sought to have it measured. Indeed, the argument of her counsel to the jury relative to Special Issue No. 14 included the following statement: "I submit that that should be answered, 'It did not become confined solely to her left leg,' and I think that all of the evidence is to the contrary."

Furthermore, the theory under which claimant proceeded, coupled with the man-

ner of conduct of trial, foreclosed any right to make the complaints asserted. In resolving the conflict the jury changed answers which had theretofore been in the company's favor and returned answers in favor of the claimant.

■ Claimant presents a series of points in which the contention is made that reversible error existed in the court's action sustaining objection to argument which she desired to present. We believe the argument was objectionable and objection thereto properly sustained. It constituted reference to facts that were neither in evidence nor inferable from the evidence. See 56 Tex.Jur.2d, p. 568, et seq., "Trial", Chap. XV, "Argument", including the text and authorities beginning at p. 613, § 271, "(Matters Outside Record)—In general".

■ Furthermore the limitation placed upon the claimant's argument would not amount to reversible error in any event. It related to the company's failure to present as a witness the physician who had treated the claimant during her period of total disability. Before the objection was sustained thereto, claimant's attorney argued thus: "And it strikes my attention that he treats her for over a year and that they pay for it. He puts her in the hospital, and then rather than call Dr. Sutherland to testify or deny our position in this lawsuit and what, under oath, this good woman says he tells her, they bring in a psychiatrist, a neurologist and a psychiatrist * * * *". Claimant had testified that Dr. Sutherland told her that she should not return to work "at all ever" if she could help it; that he did not want her to do so. She repeated her testimony to this effect, somewhat embellished, several times. No other testimony constituted a denial that such had been the doctor's statements. The claimant's attorney was allowed to argue before the jury that the statements had been made. Under the circumstances we believe that the restriction placed upon the argument, even when it is assumed to have constituted error, would not have amount-

ed to reversible error. Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953).

By other points of error the claimant complains because of jury findings as to the period of time her "temporary" and "partial" disability existed. Essentially, her contentions assert "no evidence" and that the answers were "against the great weight and preponderance of the evidence". We have reviewed the evidence. This opinion need not be lengthened by a discussion thereof. Testimony from the lips of the claimant, herself, elicited on cross-examination, provided evidence which supported the submission of the issues and the jury's answers.

Judgment is affirmed.